1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HULEN T. HARRELL,

11               Plaintiff,            No. CIV S-04-1968 JAM DAD P

12        vs.

13   P.D. PALMER, et al.,             ORDER AND

14               Defendants.          FINDINGS AND RECOMMENDATIONS

15   _____/

16             Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

17   filed pursuant to 42 U.S.C. § 1983.  Counsel on behalf of defendant Palmer has filed a motion to

18   dismiss on the grounds that plaintiff failed to exhaust his available administrative remedies prior

19   to bringing this action, plaintiff's complaint fails to state a cognizable claim for relief, and

20   defendant Palmer is entitled to qualified immunity.  Plaintiff has filed a timely opposition, and

21   defendant has filed a timely reply.

22                                **BACKGROUND**

23             Plaintiff is proceeding on an amended complaint solely against defendant Palmer.

24   Therein, he alleges as follows.  On April 21, 2004, defendant Palmer transferred plaintiff from

25   Building V where he had a compatible cellmate to Building I where he had an incompatible

26   cellmate.  Several months later, defendant Palmer transferred plaintiff from Folsom State Prison

1

1  to California State Prison ("CSP") - Solano.  Plaintiff claims that the defendant's housing

2  decisions were racially motivated because plaintiff is African American.  Plaintiff also claims

3  that defendant Palmer's housing decisions caused him to lose a paid kitchen job.  (Am. Compl. at

4  8-10.)

5          By way of relief, plaintiff requests declaratory relief, reimbursement for his lost

6  wages, and a transfer back to Folsom State Prison.  (Am. Compl. at 11.)

7                          **DEFENDANT'S MOTION TO DISMISS**

8  I. <u>Defendant's Motion</u>

9          Counsel for defendant argues that this action should be dismissed because

10  plaintiff brought suit prior to exhausting available administrative remedies.  Based on the

11  documents attached to plaintiff's complaint, counsel acknowledges that plaintiff complained in

12  Inmate Appeal FSP 04-0789 that his transfer from Building V to Building I was racially

13  motivated.  However, counsel argues that plaintiff withdrew that administrative appeal before

14  obtaining a director's level decision and failed to properly exhaust his administrative remedies

15  prior to filing this action.  (Def.'s Mot. to Dismiss at 4-5.)

16          Counsel also argues that plaintiff's equal protection claim fails because

17  defendant's housing decisions were not racially motivated.  Based on the documents attached to

18  plaintiff's complaint, counsel contends that the defendant did not discriminate against plaintiff.

19  With respect to plaintiff's move from Building V to Building I, counsel argues that although

20  plaintiff claims defendant Palmer reassigned him because he is African American, plaintiff was

21  actually replaced in Building V by an inmate who is also African American.  With respect to

22  plaintiff's transfer from Folsom State Prison to CSP-Solano, counsel contends that the California

23  Department of Corrections and Rehabilitation ("CDCR") was restructuring and reclassifying

24  Folsom State Prison as a Level III facility, requiring the relocating of all Level II inmates,

25  including plaintiff.  Counsel maintains that defendant Palmer did not treat plaintiff differently

26  /////

1    from other inmates with his same security classification and that he based his housing decisions

2    on legitimate penological purposes.  (Def.'s Mot. to Dismiss at 5-7.)

3             Finally, counsel argues that defendant Palmer is entitled to qualified immunity.  In

4    this regard, counsel contends that plaintiff has no clearly established right to remain housed in a

5    particular building or at the institution of his choice.  In addition, defendant Palmer reached his

6    housing decisions with the understanding that transferring Level II inmates was necessary to

7    convert Folsom State Prison to a Level III facility.  In this regard, counsel contends that no

8    reasonable person in defendant Palmer's position would have believed that his housing decisions

9    violated plaintiff's constitutional rights.  (Def.'s Mot. to Dismiss at 7-8.)

10   II. <u>Plaintiff's Opposition</u>

11             In opposition to defendant's motion, plaintiff argues that he exhausted his

12   administrative remedies.  Plaintiff acknowledges that he withdrew Inmate Appeal FSP 04-0789

13   but argues that he did so because prison officials promised to relocate him back to Building V.

14   When prison officials reneged on their promise, he submitted the appeal to the director's level of

15   review.  Prison officials, however, returned the appeal to him with instructions to seek a decision

16   from the second level of review.  Plaintiff argues that he could not submit his appeal to the

17   second level of review because the time to do so had expired.  Plaintiff also argues that he

18   subsequently pursued his appeal (FSP 04-0925) through the director's level of review.  He

19   contends that he reasserted his claims regarding his housing reassignments in that administrative

20   appeal and attached a copy of his first appeal (FSP 04-0789) as an exhibit thereby clarifying that

21   he was complaining both about his transfer to a different prison and his desire to return to

22   Building V at Folsom.  (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 1-2 & Exs.)

23             Plaintiff also argues that the housing relocation process is race based and

24   maintains that the number of white inmates housed in Building V is disproportionate to the total

25   number of white inmates in the prison.  Plaintiff contends that the disparity between African

26   American and white inmates in Building V could not possibly occur by chance.  Plaintiff also

1  contends that correctional staff promote a "special preference" for white prisoners in Building V

2  and that defendant Palmer's explanations for his housing reassignments are "pretextual." In fact,

3  plaintiff contends the CDCR has admitted in other cases that it has used a race-based policy to

4  make its housing decisions.  (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 5-7; Pl.'s Decl. at 2-4.)

5          Finally, plaintiff argues that defendant Palmer is not entitled to qualified

6  immunity because his conduct violated plaintiff's clearly established constitutional rights.  In

7  addition, plaintiff contends that he is not requesting the award of money damages but seeks only

8  back pay related to his lost kitchen job.  (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 7-8 & 12.)

9  III.  <u>Defendant's Reply</u>

10          In reply, counsel for defendant reiterates the claim that plaintiff failed to exhaust

11  his remedies.  Counsel acknowledges that plaintiff attempted to resurrect his first administrative

12  appeal (FSP 04-0789), regarding his move from Building V to Building I, in his second appeal

13  challenging his transfer from Folsom State Prison to CSP-Solano.  However, counsel contends

14  that plaintiff was required to exhaust the two incidents separately.  (Def.'s Reply at 3-4.)[1]

15                              **ANALYSIS**

16  I.  <u>Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)</u>

17          By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42

18  U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions

19  under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

20  prison, or other correctional facility until such administrative remedies as are available are

21  exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about

22  prison life, whether they involve general circumstances or particular episodes, and whether they

23  allege excessive force or some other wrong."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

24  /////

---

25
26          [1]  Counsel also reiterates the other arguments originally advanced in support of the
    motion to dismiss.  (Def.'s Reply at 4-5.)

1    The U.S. Supreme Court has ruled that exhaustion of prison administrative

2  procedures is mandated regardless of the relief offered through such procedures.  Booth v.

3  Churner, 532 U.S. 731, 741 (2001).  The Supreme Court has also cautioned against reading

4  futility or other exceptions into the statutory exhaustion requirement.  Id. at 741 n.6.  Moreover,

5  because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion

6  requirement by filing an untimely or otherwise procedurally defective administrative grievance or

7  appeal.  Woodford v. Ngo, 548 U.S. 81, 90-93 (2006).

8    In California, prisoners may appeal "any departmental decision, action, condition,

9  or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code

10  Regs. tit. 15, § 3084.1(a).  Most appeals progress from an informal review through three formal

11  levels of review.  See Cal. Code Regs. tit. 15, § 3084.5.  A decision at the third formal level, also

12  referred to as the director's level, is not appealable and will conclude a prisoner's administrative

13  remedy.  Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2).  A California prisoner is

14  required to submit an inmate appeal at the appropriate level and proceed to the highest level of

15  review available before filing suit.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005);

16  Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

17    The PLRA exhaustion requirement is not jurisdictional but rather creates an

18  affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion.  See

19  Jones v. Bock, 549 U.S.199, 216 (2007) ("[I]nmates are not required to specially plead or

20  demonstrate exhaustion in their complaints.");  Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th

21  Cir. 2003).  The defendants bear the burden of raising and proving the absence of exhaustion.

22  Wyatt , 315 F.3d at 1119.  "In deciding a motion to dismiss for a failure to exhaust nonjudicial

23  remedies, the court may look beyond the pleadings and decide disputed issues of fact."  Id.  "I[f]

24  the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss

25  for failure to exhaust–a procedure closely analogous to summary judgment–then the court must

26  /////

1   assure that [the prisoner] has fair notice of his opportunity to develop a record."[2] Id. at 1120

2   n.14.  When the district court concludes that the prisoner has not exhausted administrative

3   remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at

4   1120.  See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied 549 U.S. 1204

5   (2007).  On the other hand, "if a complaint contains both good and bad claims, the court proceeds

6   with the good and leaves the bad." Jones, 549 U.S. at 221.

7   II.  Discussion

8           The PLRA requires a prisoner to exhaust his administrative remedies as long as

9   the administrative authorities can take some action in response to the complaint.  See Booth, 532

10   U.S. at 733-34; see also Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to

11   exhaust 'available' remedies persists as long as some remedy remains 'available.").

12           In his second inmate appeal (FSP 04-0925), plaintiff wrote:

13       **Describe Problem:** Violation of due process rights to 72 hour
         notice of classification committee hearing regarding involuntary
14       transfer per. 15 CCR, Sec. 3375(f)(1); And violation of equal
         protection right as a black man and state prisoner [see, attached
15       exhibit p5-2, for clarification of additional facts stated there in are
         hereby incorporated for all purposes herein consistent with the
16       facts in this present 602 appeal per. 15 CCR, sec. 3084.2.(a)(2)]
         And lastly, false claim of CDC "state of emergency" (see, attached
17       exhibit R5-3[)] (see, 602 attachment sheet for continuation)

18       **Action Requested:** vacation of 5-28-04 classification committee
         transfer decision and referal [sic] of matter back to 5-building Lt.
19       Popovich.

20   Plaintiff attached to his second appeal (FSP 04-0925) a copy of his first appeal (FSP 04-0789) in

21   which he complained that prison officials had used unfair criteria to move him from Building V

22   /////

23   /////

24   /////

25   

26       [2]  Plaintiff was notified of the requirements for opposing a motion to dismiss brought
     pursuant to non-enumerated Rule 12(b) on April 15, 2008.  (Order filed Apr. 15, 2008 at 3-4).

1   to Building I.[3]  Plaintiff explained that he withdrew Inmate Appeal FSP 04-0789 after the

2   informal level of review because Lieutenant Popovich intimated to him that his housing

3   assignment could be handled without going through the appeals process.  Plaintiff also explained

4   that, had Lieutenant Popovich kept his word, he would have been moved back to Building V

5   before his classification hearing, which ultimately resulted in his transfer to CSP-Solano.

6   Plaintiff noted that he believed that prison officials deliberately deceived him so that he would

7   withdraw Inmate Appeal FSP 04-0789 and be transferred to a different prison before he could

8   assert his racial discrimination claims.  (Pl.'s Opp'n to Def.'s Mot. to Dismiss, Exs.)

9          Plaintiff pursued Inmate Appeal FSP 04-0925 through the director's level of

10  review.  Nevertheless, defense counsel argues that plaintiff was required to separately exhaust his

11  complaint about his housing reassignment from Building V to Building I and his complaint

12  regarding his transfer from Folsom State Prison to CSP-Solano.  However, neither the PLRA nor

13  CDCR procedures require plaintiff to exhaust claims separately.  See Jones, 549 U.S. at 217-19.[4]

14  The PLRA only requires that prisoners properly exhaust "such administrative remedies as are

15  available."  42 U.S.C. § 1997e(a).  See also Woodford, 548 U.S. at 90-91.  In addition, under

16  California regulations, state prisoners may appeal "any departmental decision, action, condition,

17  or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code

18  

19         [3]  Defendant Palmer responded to Inmate Appeal 04-0789 at the informal level,
    acknowledging that plaintiff was appealing his housing reassignment but denying relief and
20  noting that the inmate who replaced plaintiff in Building V was also African American.

21         [4]  In Jones, two § 1983 suits were dismissed for failure to exhaust administrative remedies
    because the plaintiffs did not identify each defendant in their administrative grievances.
22  Rejecting the "name-all-defendants" rule, the Supreme Court held that "exhaustion is not per se
    inadequate simply because an individual later sued was not named in the grievances."  Jones v.
23  Bock, 549 U.S.199, 219 (2007).  The Court explained that nothing in the PLRA requires that the
    plaintiff name all of the defendants during the grievance process.  In addition, the Court
24  explained that "[n]othing in the MDOC [Michigan Department of Corrections] policy itself
    supports the conclusion that the grievance process was improperly invoked simply because an
25  individual later named as a defendant was not named at the first step of the grievance process."
    Id. at 218.  The Court noted that at the time the prisoners had filed their grievances, the MDOC
26  policy only told prisoners to "be as specific as possible."  Id.

Regs. tit. 15, § 3084.1(a).  This language from the regulation is included in the first sentence of the standard inmate appeal form which states:  "You may appeal any policy, action or decision which has a significant adverse affect upon you."  The form then merely instructs the inmate to "Describe Problem" and state the "Action Requested."  Nowhere does the form tell prisoners that they must exhaust or grieve each of their complaints or claims in separate administrative appeals.[5]  If the prisoner proceeds to the second level after receiving a response at the first level, he is required only to explain why he is dissatisfied with the response he received.  At the third level, a prisoner is required only to "add data or reasons for requesting a Director's Level Review."

Based on the record in this case, the undersigned finds that prison officials who reviewed plaintiff's second appeal (FSP 04-0925) would clearly have understood what plaintiff was complaining about and what relief he was seeking.  Although it appears that at some point during the administrative review process the exhibit (FSP 04-0789) became detached from the second appeal (FSP 04-0925), in each response to that appeal prison officials acknowledged that plaintiff was complaining about both his transfer to another prison as well as his desire to move back to Building V at Folsom State Prison.  (Am. Compl., Ex. A.)  Prison officials would not have been any more aware of plaintiff's ongoing complaint had he repeated the grievance process each time he received a new housing assignment.  Accordingly, plaintiff satisfied the purpose of the exhaustion rule.  See Jones, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation.")).

As noted above, the defendant bears the burden of raising and proving the affirmative defense of failure to exhaust administrative remedies.  Jones, 549 U.S. 216; Wyatt,

---

[5]  Indeed, proceeding in such a piecemeal fashion would likely be no more welcome in a prison grievance proceeding then it would be before the courts.

1  315 F.3d at 1117-19 & nn.9 & 13.  Defendant Palmer has not carried that burden in this instance.

2  Accordingly, defendant's motion to dismiss for failure to exhaust administrative remedies prior

3  to filing suit should be denied.

4  III.  Legal Standards Applicable to a Motion to Dismiss Pursuant to Rule 12(b)(6)

5           A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

6  Procedure tests the sufficiency of the complaint.  North Star Int'l v. Arizona Corp. Comm'n, 720

7  F.2d 578, 581 (9th Cir. 1983).  Dismissal of the complaint, or any claim within it, "can be based

8  on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

9  cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

10  See also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  In order to

11  survive dismissal for failure to state a claim a complaint must contain more than "a formulaic

12  recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

13  raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S.

14  544, ___, 127 S. Ct. 1955, 1965 (2007).

15           In determining whether a pleading states a claim, the court accepts as true all

16  material allegations in the complaint and construes those allegations, as well as the reasonable

17  inferences that can be drawn from them, in the light most favorable to the plaintiff.  Hishon v.

18  King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S.

19  738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In the context of a

20  motion to dismiss, the court also resolves doubts in the plaintiff's favor.  Jenkins v. McKeithen,

21  395 U.S. 411, 421 (1969).  However, the court need not accept as true conclusory allegations,

22  unreasonable inferences, or unwarranted deductions of fact.  W. Mining Council v. Watt, 643

23  F.2d 618, 624 (9th Cir. 1981).

24           In general, pro se pleadings are held to a less stringent standard than those drafted

25  by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court has an obligation to construe

26  such pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

9

1  However, the court's liberal interpretation of a pro se complaint may not supply essential

2  elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d

3  266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

4  IV.  Discussion

5          Equal protection is relevant with respect to classifications that impermissibly

6  operate to disadvantage a suspect class or improperly interfere with an individual's exercise of a

7  fundamental right.  See Johnson v. California, 543 U.S. 499, 515 (2005) (holding that strict

8  scrutiny is the proper standard of review for a prisoner's challenge to a prison's unwritten race-

9  based housing policy).  Here, the pro se plaintiff's amended complaint is somewhat difficult to

10  decipher.  Nonetheless, plaintiff has sufficiently alleged that defendant Palmer's housing

11  reassignments were racially motivated and that the defendant both unfairly moved him from

12  Building V to Building I and then unjustifiably transferred him from Folsom State Prison to CSP-

13  Solano.

14          Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and

15  plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

16  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

17  Corp., 550 U.S. at ___, 127 S. Ct. at 1965.  Nevertheless, defense counsel moves to dismiss

18  plaintiff's claims as groundless because the documentation attached to his complaint purportedly

19  demonstrate that defendant Palmer's housing decisions with respect to plaintiff were based on

20  legitimate penological purposes.  Defense counsel's position on the merits of plaintiff's claims

21  may well ultimately prove to be correct.  However, on a motion to dismiss, "[t]he issue is not

22  whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

23  support the claims.  Indeed, it may appear on the face of the pleadings that a recovery is very

24  remote and unlikely but that is not the test."  Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003)

25  (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  Here, plaintiff has adequately alleged a

26  /////

1  cognizable equal protection claim.  Accordingly, defendant Palmer's motion to dismiss for

2  failure to state a claim should be denied.

3  V.  <u>Qualified Immunity</u>[6]

4          "Government officials enjoy qualified immunity from civil damages unless their

5  conduct violates 'clearly established statutory or constitutional rights of which a reasonable

6  person would have known.'"  <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001) (per curiam)

7  (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  The threshold question for a court

8  required to rule on a qualified immunity defense is whether the facts alleged, taken in the light

9  most favorable to the plaintiff, demonstrate that the defendants' conduct violated a statutory or

10  constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If no such right would have

11  been violated even if the plaintiff's allegations were established, "there is no necessity for further

12  inquiries concerning qualified immunity."  <u>Id.</u>

13          If a violation of a statutory or constitutional right is demonstrated by the plaintiff's

14  allegations, the court's next inquiry is "whether the right was clearly established."  <u>Id.</u>  This

15  inquiry must be undertaken in light of the specific context of the case.  <u>Id.</u>  In deciding whether

16  the plaintiff's rights were clearly established, "[t]he proper inquiry focuses on whether 'it would

17  be clear to a reasonable officer that his conduct was unlawful in the situation he confronted' . . .

18  or whether the state of the law in [the relevant year] gave 'fair warning' to the officials that their

19  conduct was unconstitutional."  <u>Clement v. Gomez</u>, 298 F.3d 898, 906 (9th Cir. 2002) (quoting

20  <u>Saucier</u>, 533 U.S. at 202) (citing <u>Hope v. Pelzer</u>, 536 U.S. 730, 731 (2002)).  Because qualified

21  immunity is an affirmative defense, the burden of proof initially lies with the official asserting

22  the defense.  <u>Harlow</u>, 457 U.S. at 812; <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992);

23  <u>Benigni v. City of Hemet</u>, 879 F.2d 473, 479 (9th Cir. 1989).

24

25      [6] Plaintiff claims in his opposition to defendant's motion to dismiss that he is merely
   seeking back pay from his kitchen job and not monetary damages.  Plaintiff is advised that back
26  pay is a form of monetary damages.

11

1    As discussed above, the facts alleged in the amended complaint, taken in the light

2 most favorable to plaintiff, are sufficient to state a cognizable equal protection claim under the

3 Fourteenth Amendment.  However, the state of the law in 2004 would not have given defendant

4 Palmer fair warning that his conduct was unconstitutional.  It is true that the Supreme Court's

5 decision in Johnson has established that racial classifications in the prison context are

6 immediately suspect.  However, the Supreme Court did not decide Johnson until 2005.

7 Defendant Palmer allegedly made his decisions regarding plaintiff's housing in 2004 when it was

8 not at all clear that prison officials could not consider race in making such decisions.  Indeed,

9 before being overruled by the Supreme Court in Johnson, the Ninth Circuit held that prison

10 officials' housing decisions based on an inmate's race would pass constitutional muster so long

11 as the challenged decision was reasonably related to legitimate penological interests.  See

12 Johnson v. California, 321 F.3d 791 (9th Cir. 2003), overruled by Johnson v. California, 543

13 U.S. 499 (2005); see also Smith v. California, No. CIV S-05-1257 GEB KJM P, 2008 WL

14 4381637 (E.D. Cal. Sept. 25, 2008) (finding that Johnson's strict scrutiny standard was not

15 clearly established in 2004); Wimberly v. County of Sacramento, No. CIV S-06-0289 RRB GGH

16 P, 2008 WL 223713 (E.D. Cal. Jan. 28, 2008) (standard by which the segregated housing of

17 prisoners should be judged was not clearly established in 2003); Watts v. Runnels, No. CIV S-

18 03-1928 JKS GGH, 2007 WL 2898563 (E.D. Cal. Sept. 28, 2007) (alleged equal protection

19 violations in connection with prisoner classification decisions made in 2002 and 2003 did not

20 violate clearly established law), aff'd, No. 07-16891, 2008 WL 5112088 (9th Cir. Dec. 2, 2008).

21 Cf. Meachum v. Fano, 427 U.S. 215, 224-25 (1976) (inmates do not have a constitutional right to

22 be incarcerated at a particular correctional facility or in a particular cell or unit within a facility);

23 Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) ("the state may change [an inmate's] place

24 of confinement even though the degree of confinement may be different and prison life may be

25 more disagreeable in one institution than in another.").

26 /////

1    Based on the state of the law in 2004, a reasonable officer in defendant Palmer's

2    position would not have believed that his housing decisions were unlawful.  Accordingly,

3    defendant's motion to dismiss plaintiff's damages claims on qualified immunity grounds should

4    be granted.[7]  See Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) ("[Q]ualified immunity is

5    only an immunity from a suit for damages, and does not provide immunity from suit for

6    declaratory or injunctive relief.") (citing L.A. Police Protective League v. Gates, 995 F.2d 1469,

7    1472 (9th Cir. 1993)).

8                                          **OTHER MATTERS**

9    Plaintiff has attached to his opposition to the pending motion a request to "recuse"

10   the state Attorney General's Office from this case.  Plaintiff claims that the Attorney General's

11   Office has taken inconsistent positions on whether prison officials have used race as a factor in

12   connection with inmate housing assignments and transfers to different prisons.  (Pl.'s Opp'n to

13   Def.'s Mot. to Dismiss at 9-10.)

14   Plaintiff has not identified any legitimate conflict of interest relating to the state

15   Attorney General's representation of defendant Palmer in this matter.  Nor has plaintiff provided

16   any other valid reason for the court to disqualify the state Attorney General's Office.

17   Accordingly, plaintiff's request will be denied.

18   Plaintiff has also filed a request for leave to amend his previous motion to

19   supplement his opposition to defendant's motion to dismiss.  Plaintiff believes that he is entitled

20

21         [7]  This conclusion is consistent with the exhibits attached by plaintiff to his amended
     complaint and incorporated therein which suggest that at the time plaintiff was moved from
22   Building V to Building I, Folsom State Prison was moving inmates with Prison Industry
     Administration jobs to Building V for security reasons because Building V was closer in
23   proximity to prison industries at Folsom.  Plaintiff, a kitchen worker, met the criteria for
     relocation to Building I in light of the nature of his job.  Moreover, plaintiff's exhibits also
24   indicate that when plaintiff was transferred to CSP-Solano, CDCR was converting Folsom State
     Prison to a Level III facility in order to accommodate an influx of inmates.  Plaintiff, a Level II
25   inmate, met the criteria to transfer to CSP-Solano.  These exhibits attached to plaintiff's amended
     complaint further support the conclusion that a reasonable officer in defendant Palmer's position
26   would not have believed that his housing decisions were unlawful.

1  to respond further to defendant's failure to exhaust argument.  On two previous occasions, the

2  undersigned denied plaintiff's request to supplement his opposition because defendant's motion

3  to dismiss was deemed submitted for decision when the defendant filed a reply.  See Local Rule

4  78-230(m).  (Orders filed Oct. 10, 2008 & Oct. 22, 2008.)  The assigned district judge also

5  denied plaintiff's motion for reconsideration.  (Order filed Nov. 13, 2008.)  In light of the court's

6  previous orders addressing plaintiff's identical requests, as well as the undersigned's

7  recommendation set forth above that defendant's motion to dismiss for failure to exhaust be

8  denied, the court will deny plaintiff's request to supplement his opposition.

9  **CONCLUSION**

10        IT IS HEREBY ORDERED that:

11        1.  Plaintiff's September 12, 2008 request to "recuse" the state Attorney General's

12 Office from this matter (Doc. No. 24) is denied; and

13        2.  Plaintiff's November 19, 2008 request for leave to supplement his opposition

14 to defendant's motion to dismiss (Doc. No. 33) is denied.

15        IT IS HEREBY RECOMMENDED that defendant's June 18, 2008 motion to

16 dismiss (Doc. No. 19) be granted in part and denied in part as follows:

17        1.  Defendant's motion to dismiss for failure to exhaust administrative remedies

18 be denied;

19        2.  Defendant's motion to dismiss for failure to state a claim be denied;

20        3.  Defendant's motion to dismiss plaintiff's damages claims on qualified

21 immunity grounds be granted; and

22        4.  Defendant Palmer be directed to file an answer in this matter in accordance

23 with these findings and recommendations and the Federal Rules of Civil Procedure.

24        These findings and recommendations are submitted to the United States District

25 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen

26 days after being served with these findings and recommendations, any party may file written

14

1   objections with the court and serve a copy on all parties.  Such a document should be captioned

2   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3   shall be served and filed within ten days after service of the objections.  The parties are advised

4   that failure to file objections within the specified time may waive the right to appeal the District

5   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6   DATED: January 16, 2009.

7

8   _____

9   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

10  DAD:9
    harr1968.57

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26